[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR MODIFICATION OF SUPPORT AND PLAINTIFF'S MOTION FOR CONTEMPT
On August 21, 2000, the parties and counsel appeared before the court for short calendar proceedings regarding child support and visitation. After brief discussion, the visitation matters were marked off and were to be reclaimed.
The court heard oral argument concerning the plaintiff's motion for contempt for nonpayment of support and the defendant was heard regarding his motion to modify or terminate child support, retroactively. The defendant stipulated that as of that date he owed the plaintiff $500.00 in unpaid child support.
The unrefuted evidence permits the court to find that defendant, as of the date of hearing, owes and is obligated to pay to the plaintiff, the sum of $500.00 as unpaid child support. That obligation is to be paid at the rate of $100.00 per month effective April 1, 2001 — as subsequently modified by this court.
The court heard evidence and testimony from the defendant that he had CT Page 3929 not paid child support for approximately six weeks previous for the reason that he had back problems which prevented him from working. He testified that he anticipated having to undergo back surgery to correct the problem. His financial affidavit file the date of the hearing indicated that his current income from all sources was "0".
The defendant testified that ALL of his current weekly expenses, including rent, food, clothing, gasoline and all other out of pocket expenses were being paid for by his live-in companion and employer, Kimberly and that he had no income of any kind. She would either pay for or give him money for every expense he had. He listed his current weekly expenses to be $245.00 on his current financial affidavit.
Counsel for the plaintiff argued that such a pattern of giving is sufficient to constitute income to the defendant and that he should not be allowed to reduce or avoid his current support obligation for that reason.
The court invited briefs on the issue and reserved decision.
The court did not review the issues raised at the hearing for several months. When it did review the matter no briefs or other authority had yet been presented to the court for its consideration.
When counsel petitioned the court to render its decision the court requested and obtained the case law referred to at argument from plaintiff's counsel and has now reviewed the evidence, testimony, statutory authority, support guidelines and case law in reaching the following findings and orders.
The contributions by the plaintiff's domestic companion have been regular and consistent and apparently unconditional. The plaintiff testified that these payments were "gifts" and there was no expectation of any repayment.
Plaintiff's counsel cited Unkelbach v. McNary, 244 Conn. 350, (1998) as authority for his the argument that the defendant had a regular and consistent financial resource in his living companion, Kimberly, and that the court should properly consider her financial contributions to the defendant as "income" to him.
The defendant argues that his domestic partner is not to be held responsible for such support obligation and that the recurring gifts and contributions by her to him should not be considered "income" for child support purposes.
CT Page 3930
The court in Unkelbach noted that the support guidelines did not expressly dictate the treatment of gratuities that have been made to a support obligor on a regular and consistent basis.
This court agrees with the technical argument of the defendant that regular contributions by a domestic partner are not to be considered "income" to the obligor. Which is not to say, however, that the support obligation is not effected by such contributions or gifts.
While the support guidelines in effect at the time of Unkelbach did not address the consequence of such contributions, the guidelines were subsequently amended in 1999 to address the treatment of such gifts and contributions.
The current guidelines in effect since August 1, 1999, contain the following definition:
(11) "Gross income"
(B) Exclusions
(iv) the income and regularly recurring contributions or gifts of a spouse or domestic partner.
However, that is not to say that there is to be no consequence where, as in this case, all of the obligor's needs are being provided by a third party.
While Unklebach may have been good law in 1998, the 1999 revision of the support guidelines expressly addresses the issue of gifts from domestic partners. ". . . [T]he commission deems it appropriate to exclude from gross income the regularly recurring contributions or gifts of a spouse or domestic partner. It does so after fully considering the decision in a recent Connecticut Supreme Court case in which the court found it appropriate to include in a parent's income the contributions made by his domestic partner toward his living expenses." Section (f)(B)(ii).
However, that is not to say that such contributions have no place in the financial picture of the obligor. The preamble goes on to state, ". . . The commission believes that the principles enunciated in that decision [Unklebach] are best embodied in the form of a deviation criterion." (Id.)
Support guidelines Preamble Sec.(h)(2) Deviation criteria — Contributions or gifts of a spouse or domestic partner — provides, CT Page 3931 in relevant part, "The commission was clear in excluding the income and regularly recurring contributions or gifts of a spouse or domestic partner from the count of gross income for child support award determinations. The commission has determined, nonetheless, that [such contributions or gifts] may, in limited circumstances constitute a financial resource justifying deviation from presumptive support amounts. Such circumstances are limited to those in which a parent has either (A) reduced his or her income or (B) experienced an extraordinary reduction in his or her living expenses as a direct result of such contributions or gifts."
The guidelines further provide:
(b) Criteria for deviation from presumptive support amounts:
(1) Other financial resources available to a parent:
(D) the regularly recurring contributions of a spouse or domestic partner, but only if it is found that the parent has reduced his or her income or has experienced an extraordinary reduction of his or her living expenses as a direct result of such contributions or gifts.
The defendant's child support obligation is presumed to be zero if he has no income and no other gifts or contributions for the court to consider. In this case, there is unrefuted evidence that the defendant receives gifts and contributions from his domestic partner which amount to $245.00 per week. The court further finds that the presumption that the defendant's support obligation is zero has been rebutted and that such an amount (zero) would be inequitable and inappropriate under the facts in his case.
The court finds that these facts permit and require a deviation upward of the presumptive support obligation of the defendant.
The court finds the support obligation of the defendant to be $35.00 per week so long as his income remains zero and so long as he continues to receive $245.00 in gifts and contributions from his domestic partner. This order is made retroactive to the date of the initial hearing before this court — August 21, 2000.
For the foregoing reasons the defendant's motion for modification is granted and the plaintiff's motion for contempt is denied.
Because the court lacks current information concerning the finances of the parties since that date, the court directs that the parties to stipulate to the current amount of outstanding support after taking into consideration any changes in the facts since he date of the last court CT Page 3932 hearing. Should the parties be unable to agree as to the amount of outstanding support, they may move the court for further proceedings to determine such amounts.
By the Court,
Joseph, W. Doherty, Judge